IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **GEOVANY PINEDA VILLEDA,**<br>　　　　*Petitioner,*<br><br>　　　v.<br><br>**MARKWAYNE MULLIN,** Secretary of the Department of Homeland Security; **U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE**, Acting Attorney General of the United States; **THE EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; J.L. JAMISON,** Warden of Philadelphia Federal Detention Center,<br>　　　　*Respondents.* | **Civil No. 26-4049** |

**MEMORANDUM**

**Costello, J.**                                                                                                **June 26, 2026**

Petitioner Geovany Pineda Villeda is a citizen of Honduras.  He entered the United States in approximately 2021.  Petitioner was initially detained by authorities in Chester County, Pennsylvania in connection with a pending criminal matter.  He was subsequently granted release upon posting of a monetary bond.  After his release, Immigration and Customs Enforcement ("ICE") detained Pineda Villeda on June 9, 2026, under 8 U.S.C. § 1225(b)(2), a provision of the Immigration and Nationality Act ("INA") which generally does not permit release on bond.  While detained at the Federal Detention Center in Philadelphia, Pennsylvania (the "FDC"), Pineda Villeda filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, arguing that his mandatory detention without bond is unlawful.  The Government opposed the Petition.  Because § 1225 does not apply to noncitizens, like Pineda Villeda, who have resided in the United States since entering the country, the Court will grant the Petition.

## I.    FACTUAL BACKGROUND[1]

Pineda Villeda entered the United States at or near the southern border in approximately 2021.  ECF No. 1 ¶ 3.  Pineda Villeda has a pending asylum application and may be eligible for adjustment of status via his spouse, who is a United States citizen.  *Id.* ¶ 5.  On June 9, 2026, ICE detained Pineda Villeda after his release from Chester County Prison.  ECF No. 5 at 4.  At the time he filed his petition, Pineda Villeda was detained at the FDC, where he remains detained.  ECF No. 1 ¶ 2, 77.

## II.    LEGAL STANDARD

A writ of habeas corpus is available "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A district court may grant a writ of habeas corpus if a petitioner is detained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  This includes a noncitizen's challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.") (citation and quotations omitted).

---

[1]  The Government does not dispute the facts in this case.  The Court will therefore decide this matter on the pleadings and without a hearing.

2

III.    **LEGAL BACKGROUND**

A.    **INA Detention Provisions**

At issue in this matter are two provisions of the INA that permit detention of noncitizens during immigration removal proceedings.  Section 1226 of the INA provides that the Attorney General may arrest and detain noncitizens subject to a few statutory exceptions.  8 U.S.C. § 1226(a).  A noncitizen may request a bond hearing before an immigration judge, who may release the noncitizen upon finding that he "poses no flight risk and no danger to the community."  *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); 8 C.F.R. § 1236.1(c)(8).  For decades, noncitizens like Pineda Villeda who entered the United States and resided in the country prior to their removal proceedings were detained under this section of the INA.

Prior to Pineda Villeda's arrest, the Department of Homeland Security ("DHS") changed course and began detaining noncitizens under § 1225 of the INA, which applies to "applicant[s] for admission" to the United States.  8 U.S.C. § 1225(b)(2)(A).  Historically, this provision applied only to individuals actively seeking to enter the country at a border or port of entry—not individuals already residing in the United States.  *Kashranov v. Jamison*, 25cv5555, 2025 WL 3188399, at *6-7 (E.D. Pa. Nov. 14, 2025).  In July 2025, DHS issued a policy directing ICE agents to consider anyone who entered the United States without admission or inspection as an "applicant for admission" regardless of how long they have already been present in the country. *Salinas Jaigua v. Jamison*, 25cv7115, 2025 WL 3757076, at *2 (E.D. Pa. Dec. 29, 2025).

Individuals detained under this provision are subject to mandatory detention pending the disposition of their removal proceedings.  8 U.S.C. § 1225(b)(2)(A).  They are generally not afforded an opportunity for a bond hearing and "may be released only 'for urgent humanitarian

reasons or significant public benefit.'"  *Kashranov*, 2025 WL 3188399, at *1 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)).

The Board of Immigration Appeals ("BIA") subsequently issued a decision endorsing DHS's new interpretation of § 1225 and ruling that all noncitizens who entered the United States without admission or inspection, including those who have been residing in the United States without lawful status, are subject to mandatory detention without bond.  *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

### B.    Pineda Villeda's Petition & the Government's Response

On June 9, 2026, ICE detained Pineda Villeda under § 1225 pursuant to the application of this new policy.  ECF No. 5 at 4.  Pineda Villeda argues that § 1225 does not apply to him because he is not actively "seeking admission" to the United States.  ECF No. 1 ¶¶ 29-44. Rather, he entered the United States in or around 2021 and has been living here for approximately five years.  *Id.* ¶¶ 3, 74.  He therefore contends that his detention is governed by § 1226, which confers the right to a bond hearing.  ECF No. 1-2 ¶¶ 1-4.[2]  He also argues that his mandatory detention without the right to a bond hearing violates his constitutional due process rights.[3]  ECF No. 1-1 ¶¶ 1-4.  Pineda Villeda asks the Court to declare his detention under § 1225 unlawful and order his immediate release.  ECF No. 1 at 22-23.

---

[2]  Petitioner's enumeration of paragraphs begins anew at each "Count" of his petition.  *See* ECF No. 1 at 19-21.  All references to e.g., "ECF No. 1-2," refer to the respective "Count" alleged in the petition.

[3]  Pineda Villeda's Petition also asserts that his continued detention violates regulations interpreting the INA and the Administrative Procedure Act ("APA").  ECF No. 1-3 ¶¶ 1-4. Because the Court concludes that Pineda Villeda is entitled to relief under the INA, it declines to reach these arguments.

4

The Government raises two arguments in opposition to the Petition.  First, that § 1225 of the INA applies to Pineda Villeda, not § 1226, and his mandatory detention is lawful under that provision.  ECF No. 5 at 5-8.  Second, that Pineda Villeda's detention without a bond hearing does not offend due process.  *Id.* at 9-10.  As courts in this District and across the country have repeatedly held in hundreds of recent cases, these arguments are unavailing.

## IV.    DISCUSSION

### A.    Section 1225 Does Not Apply to Pineda Villeda

The disposition of this case depends on whether § 1225 or § 1226 applies to noncitizens like Pineda Villeda, who have resided in the United States since entering the country.  The Court finds that § 1226—and not § 1225—applies here.

In resolving issues of statutory interpretation, the inquiry begins with the text, and "proceed[s] from the understanding that '[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.'"  *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (quoting *BP America Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006)).  A "word must not be read in isolation but instead defined by reference to its statutory context."  *U.S. v. Husmann*, 765 F.3d 169, 173 (3d Cir. 2014) (internal citations omitted).

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  It states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal hearings.  8 U.S.C. § 1225(b)(2)(A).  By its terms, this section applies to a noncitizen who is both "an applicant for admission" and "seeking admission."

An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)[.]"  8 U.S.C. § 1225(a)(1).  The statute also defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).

The INA does not define the phrase "an alien seeking admission."  Courts in this District have construed this language to mean "*actively* trying to acquire or gain 'lawful entry . . . after inspection and authorization by an immigration officer.'"  *Kashranov*, 2025 WL 3188399, at *6 (internal quotations omitted).  The Court agrees with this interpretation of the statute for several reasons.

First, the plain text supports this reading.  The present participle "seek*ing*" connotes "ongoing and continuous action."  *Id.*  "Seeking admission" therefore means taking ongoing, affirmative steps to enter the United States, typically at a border or port of entry by presenting oneself for inspection and authorization.  *Id.*  Second, the statutory context of § 1225(a) confirms it governs "inspections and detentions" of noncitizens at the border.  *Id.* at *7.  As Judge Wolson has explained in detail, various provisions of § 1225(b) refer to "inspection" of noncitizens and the treatment of noncitizens "arriving from contiguous territory."  *Id.* (internal quotations omitted).  These references confirm that mandatory detention under § 1225(a) applies to individuals detained "at or immediately following border crossing."  *Id.*

Basic principles of statutory construction lend further support to this interpretation. Congress used two distinct terms when drafting the INA— "seeking admission" and "applicant for admission."  If the Court were to accept the Government's position that these terms are

interchangeable, one phrase would be rendered "entirely meaningless." *Id.* (citing *Pulsifer v. United States*, 601 U.S. 124, 143 (2024) (explaining canon against surplusage)).

The Government notes that divided panels of the Fifth and Eighth Circuits found the Government's interpretation of § 1225 to be correct. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026); *Avila v. Bondi, et al.*, 170 F.4th 1128, 1133-35 (8th Cir. 2026). The Government candidly acknowledges that the Second, Sixth, and Eleventh Circuits have rejected the Government's arguments and have agreed with the position taken by this Court.[4] *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 84-88 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 723-32 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1266-76 (11th Cir. 2026). The Fifth and Eighth Circuit opinions reasoned that the terms "applicant for admission" and "seeking admission" have the same meaning. *Buenrostro-Mendez*, 166 F.4th at 502; *Avila*, 170 F.4th at 1133-35. These opinions are not binding authority. Moreover, for the reasons stated above, the Court does not find the reasoning of these decisions persuasive.

The Government makes the additional argument that Pineda Villeda is subject to mandatory detention based on the reasoning in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 216 (BIA 2025). ECF No. 5 at 7-8. In that case, the BIA concluded that Immigration Judges lack authority to hear bond requests by noncitizens detained pursuant to § 1225(b)(2) because

---

[4] A Seventh Circuit panel recently split on the government's position. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. 2026). Writing the opinion for the court, Judge Lee held, among other things, that § 1225 "applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior." *Id.* at 856. Concurring in the judgment, Judge Pryor declined to reach the merits of the Government's interpretation of § 1225. *Id.* at 857-58. Judge Kirsch, dissenting, agreed with the Government's interpretation and would have held that the reach of § 1225 is not limited to "aliens encountered at the borders and ports of entry." *Id.* at 864.

those individuals are subject to mandatory detention without a bond hearing, "regardless of their manner of entry into the country or how long they have resided here." *See Mirdjalilov v. Warden of Fed. Det. Ctr. Philadelphia*, 25cv7068, 2026 WL 184249, at *3-5 (E.D. Pa. Jan. 23, 2026). This argument has not succeeded in this District. *See id.* at *3-5 (Leeson, J.) (finding that *Hurtado* has been rejected by "the vast majority of district court opinions in the Third Circuit" and that "federal district courts need not defer to its reasoning"); *accord Ochoa v. Rose,* 25cv7021, 2025 WL 3725042, at *3 (E.D. Pa. Dec. 24, 2025) (Quiñones, J.); *Ndiaye v. Jamison*, 25cv6007, 2025 WL 3229307, at *4 (E.D. Pa. Nov. 19, 2025), *adhered to*, 25cv6007, 2026 WL 373247 (E.D. Pa. Feb. 10, 2026) (Sánchez, J.). This Court similarly disagrees with the Government's argument. Pineda Villeda has resided in the United States for nearly five years and is not actively seeking admission. Thus, for the reasons articulated above, *supra* at 6-7, he is not subject to mandatory detention under § 1225.

His detention is instead governed by § 1226 because he is a "[noncitizen] already present in the United States." *Jennings*, 583 U.S. at 303. Section 1226, titled "Apprehension and detention of aliens," provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States[.]" 8 U.S.C. § 1226(a). Except under very limited circumstances, noncitizens detained under this section are entitled to a bond hearing and an opportunity for release pending the outcome of immigration proceedings. *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d). Because § 1226 applies, Pineda Villeda's mandatory detention under § 1225 is unlawful.

### B.    Due Process

The Government next argues that Pineda Villeda's mandatory detention pending the resolution of his removal proceedings does not offend due process. ECF No. 5 at 9-10. The Court disagrees.

"It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523 (internal quotations omitted).  To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, which weighs (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. 319, 335 (1976).

Each *Mathews* factor weighs in favor of Pineda Villeda.  First, he has a strong liberty interest in being free from mandatory detention.  Second, Pineda Villeda's detention under § 1225 poses a high risk of erroneously depriving him of his rights because he has not been afforded the opportunity for a neutral decisionmaker to make an individualized determination about whether he poses a flight risk or a danger to the community.  Third, a bond hearing poses a minimal administrative burden to the Government.  That minimal burden is clearly outweighed by Pineda Villeda's strong liberty interest and right to be heard.

## V.    CONCLUSION

Section 1226 applies to Pineda Villeda's detention because he is not actively seeking admission and has been living in the United States for nearly five years.  Therefore, his continued detention under § 1225 is unlawful.  As a result, the Court will grant his Petition.  An appropriate Order follows.

**BY THE COURT:**

_____
MARY KAY COSTELLO
United States District Judge

9